Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

January 27, 2020

Magistrate Judge Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Bernard Augustine, 18-cr-393 (SJ / RML)

Dear Judge Levy,

We write in response to the government's letter dated January 17, 2020, related to Mr. Augustine's suppression motion.

In a suppression motion and reply, filed on September 20 and November 12, 2019, Mr. Augustine explained at length that he was subjected to numerous lengthy interrogations by Tunisian officials in which he was physically abused, threatened with further abuse, forced into stress positions, and heard other people being tortured. Dkt. 35 & 39. He also explained that the same Tunisian authorities who had already physically harmed him were present during the interrogation by the FBI. He submitted numerous documents that support these facts:

- First, he submitted an affidavit from Dr. Kate Porterfield, which describes in detail what the Tunisian interrogators did to Mr. Augustine, and sets forth her own clinical observations about how these abusive interrogations continue to affect Mr. Augustine to this day. Dkt. 35, Ex. A.

- Second, he has submitted his own affidavit, affirming that the facts as laid out in Dr. Porterfield's affidavit are correct to the best of his recollection. (Submitted in court January 3, 2020, and attached to this letter).

- Third, he cited to numerous U.S. State Department, United Nations, and non-profit organization reports explaining that the type of coercive and violent treatment Mr. Augustine experienced was exceedingly common in the place where Mr. Augustine was detained at the time of his detention. Dkt. 35, p. 7-9, & Ex. E.

- Fourth, he submitted a letter to his mother, which was sent shortly after the interrogations, explaining that he had spoken to interrogators "under pressure." Dkt. 35, Ex. D.

- Finally, he submitted the government's own documents indicating that he was subjected to numerous interrogations by the Tunisian authorities and that the Tunisian authorities were present when he met with the FBI. Dkt. 35, attorney affidavit; Exs. B-C. As the government redacted the names of the interrogators and other participants from these documents it is difficult to match the reports from the United States and Tunisian authorities with each other. *See* Dkt. 35, attorney affidavit.

All of these documents support that Mr. Augustine's account is accurate.

The government has still submitted no documents, affidavits, or alternative version of events. It has also, thus far, refused to provide unredacted copies of the reports about the interrogations. Nonetheless, the government now states that it "does not dispute that [Mr. Augustine] claimed at the time of his interview by the FBI, that he had had been slapped in the back of his head once by a Tunisian official. The government disputes the remaining allegations of mistreatment." Gov. Ltr. 1. The government later says that Mr. Augustine "did not allege any other misconduct during the [FBI]" interrogation and "[a]ccordingly, [Mr. Augustine's] later claims that he was forced to stand for multiple hours, hear[d] torture, and additional physical abuse are disputed." Gov. Ltr. 2-3.

Notable is what the government apparently does not dispute. The government does not dispute that Mr. Augustine was interrogated at length by the Tunisian authorities before he met with the FBI. The government does not dispute that the same Tunisian authorities who Mr. Augustine explained had physically abused him

were present at the FBI interrogation. The government does not dispute that Mr. Augustine told the FBI that the Tunisians had "smacked [him] around" "just prior to" the FBI interrogation and that the FBI asked no follow-up questions. The government does not dispute that the U.S. Government, United Nations, and non-profit organizations reported that torture and physical coercion, including stress techniques, were common in Tunisian garde à vue police custody when Mr. Augustine was detained. The government does not state that it spoke to the Tunisian interrogators and that those interrogators denied Mr. Augustine's statements.

Rather than disputing the facts of what happened, the government just says that Mr. Augustine did not tell the FBI about the further abuse during the interrogation. That is correct: other than telling the FBI that the Tunisians had smacked him around right before meeting the FBI, Mr. Augustine didn't further detail the rest of the abuse. That is also unsurprising: the same Tunisian authorities who had abused and threatened him were present in the room. But, that Mr. Augustine did not immediately tell the FBI everything that happened, does not undercut his credible account of the abuse.

Because the government only denies Mr. Augustine's account in a conclusory fashion it remains unclear what the government thinks is incorrect about it. What does the government believe occurred during the interrogations by the Tunisians that directly preceded the interrogation by the FBI with the same Tunisian guards present? The government does not say. Has the government spoken to any of the Tunisian interrogators and asked them what occurred during those interrogations? We don't know. Does the government disbelieve its own State Department reports about torture and stress positions being used commonly on Tunisian detainees just after their arrests, especially when the detainees were accused of terrorism? It is not clear. After Mr. Augustine told the FBI that he was smacked around, did the FBI follow-up and ask the Tunisian officials what had happened? It appears not.

Indeed, the government has still detailed no alternative version – sworn or unsworn – of what happened to Mr. Augustine while in the custody of the Tunisians before meeting with the FBI.

Mr. Augustine, on the other hand, has introduced ample evidence that his confession was involuntary. He was 19 years old, in a foreign country where he didn't speak the language, was not read his *Miranda* rights, had been largely kept awake for 24 hours, interrogated for hours, was physically and verbally assaulted, and threatened

with additional violence. *See* Dkt. 37 (collecting cases finding statements involuntary based on these types of factors). The government has offered no credible or specific dispute of any of these facts.

It is the government who "bears the burden" of showing that a confession is voluntary. *E.g., United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012); *United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010) ("courts place upon the government the burden to prove that a defendant's confession was voluntary"). The government's conclusory statement that it "disputes" the "allegations of mistreatment" does not meet its burden.

Because the government has not met its burden, Mr. Augustine's motion to suppress should be granted without a hearing. Despite this, the defense has no objection to the Court conducting a hearing at which the government attempts to meet its burden by calling witnesses who have personal knowledge of what occurred during Mr. Augustine's detention and interrogations in Tunisia. Alternatively, if the Court agrees that the government has not sufficiently disputed the facts to merit a hearing, Mr. Augustine requests that the Court hold oral argument on Mr. Augustine's motion to suppress.

/s/

Samuel Jacobson
Allegra Glashausser
Assistant Federal Defenders
Federal Defenders of New York
(718) 407-7429

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

BERNARD AUGUSTINE,

- v. -

UNITED STATES OF AMERICA

---------------------------------------------------------------x

STATE OF NEW YORK )
) ss.:
COUNTY OF KINGS )

BERNARD AUGUSTINE, being duly sworn, deposes and says:

1. I am the defendant, Bernard Augustine.

2. I have reviewed the affirmation of Dr. Katherine Porterfield which was filed on September 20, 2019, as exhibit A to a motion to suppress statements in my case.

3. With respect to my experiences in being arrested and interrogated in Tunisia, Dr. Porterfield's affirmation is correct to the best of my recollection.

BERNARD AUGUSTINE

Dated: Brooklyn, New York
January 3, 2020