Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

October 1, 2020

By ECF and Email
Magistrate Judge Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: United States v. Bernard Augustine, 18-cr-393 (SJ / RML)

Dear Judge Levy:

Bernard Augustine has now been in pre-trial detention at MDC for 2 years and 7 months. Before that, he was held for 2 years in Tunisian prison, where he was beaten, threatened, and endured inhumane conditions. On November 14, 2019, Bernard requested bail, arguing his pretrial detention violated due process. *See* Dkt. No. 42. Since then, Bernard has been incarcerated an additional 10 months, still with no trial date in sight, with worsening conditions of confinement, and a lack of access to his legal team. We renew his motion for release under the Bail Reform Act.

While incarcerated, Bernard has grown from a teenager to a 24 year-old young man. He has now been imprisoned for almost five years, on a one-count indictment, for attempting to commit an offense that he did not intend to commit, was by any measure far away from committing, and could not have committed. He is still waiting for a trial to be set. His access to counsel has been curtailed and his conditions of confinement have deteriorated. Pretrial detention must be "regulatory, not penal," and can violate due process where it "become[s] excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987). Bernard's detention has been excessively prolonged. Even if the Bail Reform Act did not require his release, his continued detention would be unconstitutional.

### A. Bernard's lack of access to counsel

Before the pandemic, counsel already had faced significant difficulties visiting Bernard and gaining his input in preparing his motions and his trial defense. *See* Dkt. No 57. In the fall and winter of 2019, his legal team attempted to visit him weekly, and often numerous times a week, but, increasingly, MDC was not producing Bernard for his visits. *Id*. Since mid-March 2020, due to the Covid-19 pandemic, counsel's access to Bernard halted completely. Counsel has been unable to visit Bernard from March through September.

Counsel also faced significant difficulties communicating with Bernard by phone. More than a dozen legal calls scheduled between July and September of 2020 were not completed due to technical difficulties at MDC. Of the calls that we received, we were met with either loud static and distortion, or a voice so faint that it could not be heard.

Although MDC has recently announced that legal visits are permitted to resume in a limited fashion,[1] this will not solve Bernard's lack of adequate access to his legal team to prepare his defense. There is no protocol to allow social distancing in the poorly ventilated visiting room, even with only two people (a client and a lawyer) meeting at one time. While both defense counsels are healthy, one has an infant at home, while the other provides care for an elderly parent. Even if one or both counsels chose to regularly take the health risk and the risk it imposes on their families to visit Bernard, current visiting is permitted in only a limited fashion. Visiting is by appointment only and must be arranged three days in advance. This would be inadequate to prepare for Bernard's defense.

It is also simply unfair to premise Bernard's right to counsel on his counsels' having to risk the health of their families with each visit. Being forced to make this choice would severely strain the attorney client relationship. The health risks are real: [redacted] The pandemic is, sadly, far from over.

---

[1] It is also not clear whether these visits will continue as New York City and MDC experience a rise in coronavirus cases. Earlier this week, those incarcerated at MDC were told to expect new lockdown measures to be imposed starting next week. It is not yet clear what those new measures will be.

A detention facility violates the Sixth Amendment when it "unreasonabl[y] interfere[s] with the accused person's ability to consult counsel." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). Unreasonable interference requires a showing much, much smaller than the one here. In *Benjamin*, the Second Circuit held that New York City correctional facilities violated the right to counsel when defense attorneys "routinely face[d] unpredictable, substantial delays in meeting with clients" and were "forced to wait between 45 minutes and two hours, or even substantially longer, after arriving at a facility to see a client." 264 F.3d at 179. Those circumstances, where the Second Circuit refused to dissolve a consent decree providing judicial supervision of legal visitation in City correctional facilities, are not even a speck of what's happening – or not happening – here. Since March 2020, there had been no legal visits for about six months. *See also Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978) (holding the MCC "severely constrained" an inmate's "access to legal counsel" where dedicated attorney visiting hours were limited to two hours a day, and most attorney visits were "made in the general visiting rooms during visiting hours thereby entailing long delays, limiting the attorney's time with his client, and totally vitiating confidentiality"), rev'd on other grounds, 441 U.S. 520 (1979).

Bernard's lack of access to counsel alone is reason to release him, as has happened even in other material support cases. *See, e.g.*, *United States v. Delowar Mohammed Hossain*, 19-Cr-606 (SHS) (S.D.N.Y July 13, 2020) (granting bail in case charging attempting to provide material support to a terrorist group, and attempting to provide "goods and services" to the Taliban). *See alsoUnited States v. Carrillo-Villa*, 20-MJ-3073 (SLC) (S.D.N.Y. Apr. 6, 2020) (releasing undocumented defendant in drug conspiracy case because of inability to meaningfully communicate with lawyer and risk of Covid-19).

### B. Bernard's conditions of confinement

The conditions of confinement in the time of the coronavirus are another reason to grant Bernard's release. Other judges have recently granted bail and compassionate release in cases with even more serious terrorism charges. *See Hossain,* Dkt. No. 19-Cr-606, Dkt. No. 37 (S.D.N.Y. July 13, 2020) (granting bail for person charged with attempted material support of a terrorist organization and attempted financial support of the Taliban); *United States v. Nicholas Alexander Rovinski*, Dkt. No. 15-cr-10153, Dkt. No. 470 (D.MA. August 11, 2020) (granting compassionate release due to the coronavirus for person five years into a 15-year

sentence for conspiracy to commit material support of a terrorist organization and a conspiracy to commit acts of terrorism). *See also United States v Nayef Amjad Qashou*, Dkt. No. 19-cr-00364 (M.D. Ala. Feb. 11, 2020) (releasing defendant who had pleaded guilty making a false statement to the FBI relating to his distribution of ISIS propaganda videos, was in contact with ISIS members via an encrypted chat application, stated that he wanted to be a soldier for ISIS, and attempted to travel to Syria).

1. Covid-19 and Continuing Lockdowns

In the time between March and September, with no access to his legal team, Bernard has faced an inordinate number of physical dangers and mental hardships. During the Covid-19 crisis, conditions at MDC Brooklyn have deteriorated. MDC was the first BOP institution in the nation to have a documented case of Covid-19. *See* Michael Balsamo, "1st fed inmate tests positive for coronavirus," Associated Press (March 21, 2020), available at https://apnews.com/ec49cc7f4d1b00bc5010dfb6d935e042. Judge Rachel Kovner, who is overseeing the class action lawsuit against MDC related to its actions during the Covid-19 crisis, found that medical staff at MDC "take days or even weeks to respond to some sick-call requests reporting Covid-19 symptoms," even when those reports include "trouble breathing." *See Chunn v. Edge*, 20cv1590 (RPK), _F.Supp.3d_, 20 WL 3055669, *17-*18 (June 9, 2020 E.D.N.Y). *Id.*, at *17-*18.

Under normal circumstances, MDC Brooklyn is one of the harshest places to be confined within the Bureau of Prisons system. There is no access to fresh air or sunlight, and people incarcerated at MDC leave the building only for court appearances. But as a result of the pandemic, Bernard has been in almost total lockdown since March 13, with at most a few hours outside his cell per week, and no legal or family visits whatsoever. These conditions are tantamount to the conditions in punitive solitary confinement.

2. [redacted]

[redacted]

[redacted]

[redacted]

[redacted] Since the lockdown began, two incarcerated people have died[2] and counsel has received reports from numerous other people in the facility who have been badly injured. The jail is not safe.[3]

---

[2] Jamel Floyd, 35 years old, died at MDC Brooklyn, on June 3, 2020, after being pepper-sprayed by officers. *See* "Inmate Death at Metropolitan Detention Center Brooklyn, NY", BOP Press Release, June 3, 2020. Congressman Jerry Nadler and Congresswoman Nydia Velazquez have called for a full investigation into his death. *See* June 4, 2020, Letter of Congressman Nadler and Congresswoman Velazquez to Inspector General Michael E. Horowitz. Kenneth Houck, 44, died just two weeks earlier, on May 19, 2020, after being found hanging in a shower in the same Solitary Housing Unit at MDC. He was an openly gay man, who had previously been assaulted while in federal custody in Philadelphia. Houck had a cellmate. Officers were supposed to be guarding the detainees 24 hours a day. The circumstances, the BOP reported to the judge overseeing Mr. Houck's case, are "unknown." *See* ECF No. 18, *United States v. Kenneth Houck*, 20 Cr. 95 (NAM) (N.D.N.Y.) (May 19, 2020, Letter of Warden Derek Edge).

[3] It is not surprising that the lockdown has led to increased violence. Experts on correctional facilities have long noted the importance of openness and transparency as necessary to preventing abuse in jails and prisons. Indeed, less than a year ago, after a comprehensive review of the circumstances of the blackout at MDC Brooklyn, the Office of the Inspector General criticized MDC Brooklyn's lack of communication with the courts, defense counsel, members of Congress, inmates and their families, and found that this

[redacted]

[redacted]

[redacted]

**C. Continued detention is unconstitutional**

Even where the Bail Reform Act does not counsel release—though we submit that it does in this case—the Constitution provides a backstop to prolonged pretrial detention. To determine whether detention has become "constitutionally excessive," the Court should consider, on a case-by-case basis: "(i) the length of detention; (ii)

---

failure of communication caused significant harms. *See* Review and Inspection of Metropolitan Detention Center Brooklyn Facilities Issues and Related Impacts on Inmates, OIG Evaluation & Inspection Division 19-04 (Sep. 2019).

[redacted]

the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based." *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993). The Court's previous denial of bail "should not prejudice a defendant petitioning for release at a subsequent time on due process grounds." *United States v. Gallo*, 653 F. Supp. 320, 339 (E.D.N.Y. 1986).

1. <u>Bernard has been detained for more than 4 ½ years, 2 ½ years at MDC</u>

"[L]ong periods of pretrial detention are anathema to our basic notions of due process." *Gallo*, 653 F. Supp. at 343. The length of detention is, therefore, a "significant factor" in the court's determination of unconstitutional detention. *Gallo*, 653 F. Supp. at 339 (holding that eight-month detention of defendant on RICO charges with alleged threats to government witness offends due process); *see also United States v. Gonzales Claudio*, 806 F.2d 334, 341 (2d Cir. 1986) (holding that fourteen months detention that will last significantly longer "points strongly to a denial of due process," remanding for setting of conditions of release); *United States v. Zannino*, 798 F.2d 544, 548 (1st Cir.1986) ("In many, perhaps most cases, sixteen months would be found to exceed the due process limitation on pretrial confinement").

Bernard's 4 ½ years of detention[5] is "excessively prolonged" detention. *See United States v. El-Hage*, 213 F.3d 74 (2d Cir. 2000). In *El-Hage*, the Second Circuit found that 30-33 months of pretrial detention "before the conclusion of a trial" was "extraordinary," and "justified only by the unprecedented scope of [alleged] violence" and the extremely complex trial preparation required. *Id.* at 76 (government alleged, *inter alia*, that the defendant "was one of Bin-Laden's trusted associates, … moved Bin Laden's money, and worked in … the Sudan-factories which served as a cover for the procurement of chemicals and weapons;" charged with six murder conspiracies and 23 other counts). The Second Circuit acknowledged that the 33-month long detention "weighs heavily in [ ] favor" of a due process violation. *Id.*

Bernard has already been detained longer than the 30-33 months deemed "extraordinary" in *El-Hage*, on dramatically less complicated and less extreme charges. He faces a one-count indictment; El-Hage faced a 29-count indictment. He is charged with no acts of violence; El-Hage was charged with <u>six murder conspiracies</u>. The 30-33 months of pre-trial detention in *El-Hage* was the outer

[5] Even if the Court declines to account for Bernard's two years of detention in Tunisia, Bernard's 2 ½ years of detention in MDC Brooklyn is excessive, particularly given that he still has no set trial date.

constitutional limit, permitted only because of the unusual nature of the case. Bernard's case is nothing like *El-Hage*. His continued detention is unconstitutional.

The other instances where the Court has found prolonged detention to be constitutional were based on dramatically shorter time periods, *see United States v. Berrios–Berrios*, 791 F.2d 246, 252, *United States v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993), *United States v. Dupree*, 833 F. Supp. 2d 241, 251–52 (E.D.N.Y. 2011) (all considering periods of detention under nine-months), or much more severe charges, *see United States v. El–Gabrowny*, 35 F.3d 63 (2d Cir. 1994) (finding 27 month detention to be constitutional where "extensive evidence" indicated defendant's participation in a conspiracy to "levy war against the United States, bombing conspiracy, and the use and carrying of destructive devices during and in relation to crimes of violence" and defendant's possession of forged passports increased his risk of flight); *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (finding expected pretrial detention of 30 months constitutional for person in leadership in crime organization, extensive travel history, and procurement of over $65 million dollars in drug revenue oversees). We cited additional authority in support of the unconstitutionality of Bernard's continued detention in our bail motion of November 14, 2019. *See* Dkt. No. 42 at 6-7 & n.1.

2. <u>Much delay is attributable to the prosecution, and the fact that Bernard still has no trial date is a fact that should weigh in favor of release</u>

Since Bernard's case was indicted on July 30, 2018, Bernard has been attempting to move his case forward, requesting discovery, a bill of particulars, and filing pre-trial motion papers. His motion to dismiss was not decided for a year, in September 2020, and the R&R is currently before Judge Johnson. His motion to suppress is still pending because the government was unable to bring its witnesses, who must travel from abroad, to court this spring and summer. He wants a speedy trial. It is still unclear when a trial will be held. That Bernard's eventual trial is still unscheduled is a fact that weighs strongly in favor of release.

The government is also responsible for Bernard's two years spent in Tunisian detention. As the Court knows from the double jeopardy briefing in this case, Tunisian authorities made Bernard available to the FBI for domestic prosecution in the week following his arrest in Tunisia, and the U.S. government stayed involved in that prosecution, but, nonetheless, waited two years to transfer Bernard from Tunisian custody to custody at the MDC.

3. <u>The evidence is far from strong enough to justify Bernard's continued, years-long, pre-trial detention</u>

Of the almost 80 cases prosecuted across the country for attempted or material support of ISIS, Bernard's stands alone as being based solely on allegations that, when he was 19 years old, he flew to Tunisia, with the intent to travel to Libya and join ISIS.

As the Court is fully aware, unlike others charged with this offense, the parties agree that Bernard never communicated with any member of ISIS. The parties agree that he never committed or planned any acts on behalf of ISIS. The parties agree he never had any resources. He was simply a 19-year-old recent high school graduate living with his mother and sisters, who researched topics related to the Islamic State and Islamic states in general for several weeks, made comments to his family and on social media that arguably pertained to the Islamic State, and flew to Tunisia. These facts are far from strong enough to justify his continued detention with no trial date set.

**Conclusion**

Mr. Augustine has been incarcerated now for more than four and a half years, without trial. For the reasons explained above and in our previous bail submissions, we respectfully request that the Court release Bernard on strict conditions under the Bail Reform Act, or in the alternative find that his continued prolonged detention violates his right to due process. Mr. Augustine's family remains eager to sign his bond, to welcome him back home in California (or find new housing in New York), and to support him if he is released.

/s/
Samuel Jacobson
Allegra Glashausser
Assistant Federal Defenders
Federal Defenders of New York

cc: all counsel of record (via ECF)