UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
UNITED STATES OF AMERICA

- v -

18 Cr. 393 (SJ)

BERNARD AUGUSTINE,

Defendant.
-------------------------------- X

Bernard Augustine's opposition
to the government's February 11, 2021 motion for a sequestered jury in the midst of a dangerous pandemic

Samuel Jacobson
Allegra Glashausser
Sabrina Shroff
Attorneys for Defendant
Bernard Augustine

TO: Seth DuCharme
United States Attorney
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

Attn: Craig Heeren
Jonathan Hafetz
Jonathon Algor
Assistant United States Attorneys

The defense submits this memorandum of law in opposition to the government's February 11, 2021 motion for an anonymous jury which asks the Court to keep from the parties the names of venire persons and jurors. This must be denied. The government's argument that the venire persons will face or fear harm is speculative and lacks factual substantiation. The government has not alleged that Mr. Augustine has ever obstructed justice or engaged in violence. It makes no assertions that there is a specific concern of any danger related to Mr. Augustine's case. The jurors will only have reason to fear service if this Court gives them one.

And the government's assertion that this illusory danger is somehow heightened by "publicity surrounding the case" is just wrong. There simply is no "publicity" surrounding this case. The defense could find no news articles – zero – about Mr. Augustine's case since 2018 – three years ago. If accepted, the government's argument would warrant anonymous juries in every material support of terrorism prosecution. That undifferentiated approach is not the law. *See United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991) (rejecting use of anonymous jury based on connection to organized crime alone).

In addition, the government also seeks, in the middle of the Covid-19 pandemic, partial sequestration so that the jury is escorted to and from the courthouse by members of the United States Marshal Service, kept together during recesses, and provided lunch as a group each day of the trial. Dkt. No. 126 ("Gov't Mot."). This second request appears tailored to delay Mr. Augustine's trial.[1] Serving on a jury is risk enough during a pandemic. But forcing jurors to also travel to and from their homes with U.S. Marshals each day and then stay together in a group throughout the day is wildly impractical and dangerous during the pandemic.

The government's motion should be denied in its entirety.

[1] The government has made this request for delay explicit in a filing yesterday evening. *See* Gov. Ltr. 2/16/21. Mr. Augustine has been requesting his speedy trial for at least 7 months, since last August, and he has been incarcerated at MDC Brooklyn for three full years. Despite this, the government today filed a lengthy letter, citing myriad reasons it cannot be ready to proceed with trial in March.

## Argument

### Point I

**The government does not allege Mr. Augustine has committed any violent act or communicated with any member of a terrorist group. The government's request for an anonymous jury is speculative, and must be rejected.**

A. Anonymous juries may only be used when there is a strong reason to believe a jury needs protection.

Empaneling an anonymous jury "carries with it numerous risks" to the integrity of the judicial process, including "the possibility of unfair prejudice to the defendant and the danger of encroaching on the presumption of innocence." *United States v. Tutino*, 883 F.2d 1125, 1132 (2d Cir. 1989). *See also United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence."). It is, therefore, justified only where "there is a strong reason to believe that the jury needs protection." *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985).

"[T]he mere incantation of words such as 'terrorist,' 'terrorism,' 'al Qaeda,' 'Bin Laden,' and '9/11' is insufficient to require an anonymous jury." *United States v. Mostafa*, 7 F. Supp. 3d 334, 337 (S.D.N.Y. 2014); *see also United States v. Fawwaz*, 57 F. Supp. 3d 307, 309 (S.D.N.Y. 2014) (same); *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991) (same, with respect to organized crime). Rather, there must be "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant[ ] and his associates such as would cause a juror to reasonably fear for his own safety." *Vario,* 943 F.2d at 241.

The government has failed to make that showing here. Mr. Augustine has no history of violence and he has no associates; there is no allegation that he has any contacts at all in ISIS or any other terrorist group. On the contrary, detained for five years, Mr. Augustine has made no threats, and has never been accused of making any threats on any government official. Locked down in MDC-Brooklyn, Mr. Augustine has no ability to interfere with the judicial process by himself and has no associates who would act on his behalf.

B. There is no reason to believe that Mr. Augustine's jury needs protection.

Mr. Augustine has never obstructed justice or engaged in violence, and the government does not allege that he has. He is not charged with personal acts of terrorism, or any conspiracy or attempt to commit acts of terrorism. Mr. Augustine is not personally accused of committing any violent acts, much less attacks on innocent New Yorkers. Mr. Augustine is not even accused of having any associates who are members of ISIS.

Rather, the government relies on the danger posed by ISIS, which even the government admits has "degrad[ed] … geographical control." Gov't Mot. at 13. Nonetheless, it states that jurors will "believe" that ISIS "remains operational and committed to violently attacking U.S. and other Western interests" and that it would be "legitimate" for a juror to "fear that an associate of" Mr. Augustine "will target them." Gov't Mot. at 12. This would not be a legitimate fear. Mr. Augustine has no "associates" in any terrorist group.

The government has not made any attempt to substantiate this fear with intelligence, historical examples, or even ISIS propaganda. The government has offered no evidence that ISIS has ever threatened or harmed a juror, a witness, an attorney, or any court personnel in any

judicial proceeding in the United States. The government has offered no evidence that ISIS has ever attempted to tamper with a juror or witness or obstruct justice. It makes only a conclusory statement that jurors would have a "general fear of retaliation." Gov't Mot. at 13. If the government's showing suffices, then every ISIS prosecution in an Article III court will warrant an anonymous jury.

Second Circuit precedent forecloses that undifferentiated result: "Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that this connection has some direct relevance to the question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up." *Vario*, 943 F.2d at 241.

The cases in which the Circuit has upheld the use of anonymous juries (including almost every such case cited in the government's motion, at 2) have always involved some concrete, specific allegation that the defendant or his criminal associates used violence or tampered with the judicial process. *See, e.g.*, *United States v. Stewart*, 590 F.3d 93, 125 (2d Cir. 2009) ("terrorist conspiracy to murder" and "charges against Stewart and Yousry" that were "in significant part about their

alleged corruption of the judicial process"); *United States v. Quinones*, 511 F.3d 289, 295 (2d Cir. 2007) ("murdering a confidential informant in retaliation for his cooperation with law enforcement"); *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) (attempt to bribe and threaten witness); *Wong*, 40 F.3d at 1376-77 (defendant's gang "had an extensive history of interfering with the judicial process," including witness killings); *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) (defendants had attempted "to subvert the judicial process through intimidation and murder"); *United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991) (co-defendant "had been murdered in circumstances that strongly suggested a connection to the present case and to certain of these defendants" and that "a government witness had recently received a middle-of-the night anonymous telephone call telling him that he would be safe so long as he remembered nothing'"); *Vario*, 943 F.2d at 240 (obstruction of justice charge "involving jury tampering"); *Tutino*, 883 F.2d at 1132 ("substantial showing that there was a risk of jury tampering"); *United States v. Barnes*, 604 F.2d 121, 141 (2d Cir. 1979) ("much pretrial publicity playing up the alleged acts of violence on the part of the actors in this case" so that "the suggestion

of disruption was manifest").

Finally, the government's reliance on *Pugh* and *al Farekh* at today's February 17 status conference is misplaced. First, in *United States v. Pugh*, a U.S. Air Force veteran and avowed terrorist not only traveled to Syria to join ISIS but was also found to be in possession of combat gear at the time of his arrest, attempted to recruit others to join ISIS, and obstructed justice by destroying thumb drives in Egypt. No. 15 Cr. 116 (NGG), 2015 WL 8481877 (E.D.N.Y. Dec. 9, 2015). And in *Pugh*, the government provided the court with articles from several news outlets (CNN, The Washington Post, The New York Times) discussing the defendant's arrest and trial, including coverage of the government's motion for an anonymous jury itself. The court in *Pugh* remarked on the recent coverage of the 2015 escalation of hostilities involving ISIS in Iraq and Syria and the impact of that coverage on the United States and the defendant's trial. But in 2021, as the focus on ISIS wanes, media coverage has in large part shifted to domestic terror groups like the Proud Boys.

Second, the government pointed today to *United States v. al Farekh*, referencing a mid-trial incident where "the defendant's father

confronted jurors, and we had a real issue as a result." Feb. 17, 2021 Status Conf. Tr. at 15:3-5. Farekh's father had approached four jurors as they left the courthouse during deliberations and said: "I haven't seen my son in 10 years, do you think that's fair?" Judge Cogan subsequently relieved the tainted jurors and ordered partial sequestration for the rest of deliberations. *See al Farekh*, No. 15 Cr. 268 (BMC), Dkt. No. 102 (E.D.N.Y. June 16, 2017). But that incident had nothing whatsoever to do with the threat of terrorism. A logical extension of the government's argument would lead to sequestration in every trial where the defendant has a caring family member or an emotional parent who might speak impulsively. But here there is not even the risk of that—Mr. Augustine's family are potential government witnesses. Surely the government isn't arguing that they would be a threat to the jury?

Moreover, unlike Mr. Augustine the defendant in *Farekh* participated in horrific acts of violence. He rose to a leadership role in al-Qaeda's external operations group which specialized in planning attacks against the United States, he constructed improvised explosive devices (IEDs), and participated in a bombing attack on a U.S. military

base in Afghanistan involving two trucks carrying thousands of pounds of explosives.

In short, with no allegation of violence or obstruction by Mr. Augustine, and only a generalized allegation that ISIS wishes Americans harm, this case lies far afield of all of the cases discussed above.

C. The factors cited by the government are unsupported by evidence.

The government claims that its request for an anonymous jury should be granted because 1) the charges are serious; 2) there is a "potential threat of corruption of the judicial process"; and 3) the "expectation of publicity." Gov't Mot. at 11. It presents insufficient evidence in support of any of these factors.

First, while the charges are serious, they are no more serious than those in a Hobbs Act robbery case. Likewise, although the penalty is severe – zero to 20 years in prison – the charge carries no mandatory minimum sentence. It is also hard to take seriously the government's dire assessment of the danger to the venire persons and the integrity of the judicial process when, for years now, this Court has held terrorism trials without a single instance of a terrorist trying to enter the Eastern

District Courthouse to intimidate, hurt, or murder a juror. In fact, no jihadi – not one from the Islamic States or Al Qaeda – has every attempted to influence a juror in any way. This is in stark contrast to the terrorists who stormed the Capitol in Washington D.C. many of whom remain free on bail.

Second, the government's sole substantiation for the assertion that the "judicial process is at risk" is that it would "not be unreasonable for jurors to believe that disclosure of their identities or information about their families or workplaces may expose them to unnecessarily heightened risk." Gov't Mot. at 14. But this would be unreasonable. As explained above, there is not a single reported instance of ISIS ever threatening or tampering with jurors in any case, ever. And this case has no allegations of Mr. Augustine committing any sort of violence.

Third, this case has generated no public or media attention since Mr. Augustine's initial arrest. A google search for "Bernard Augustine" reveals no news about him or the case since the government's own publicity seeking announcement in 2018 of Mr. Augustine's arrest. A search of "Augustine" generates results of a boxing match involving a

high school "St. Augustine." Even the local newspapers, such as the Inner City Press, which cover many of the status conferences and bail applications in the Eastern and Southern District court cases has had no interest in, or coverage of Mr. Augustine's case. The government has simply provided no facts that support their argument that the trial will generate such publicity that might expose the jurors to extraordinary pressures that could impair their ability to be fair. *See United States v. Antico*, 2010 WL 254877, at *1 (E.D.N.Y. 2010); *see also Thai*, 29 F.3d at 801; *United States v. Paccione*, 949 F.2d 1182, 1192 (2d Cir. 1991); *Thomas*, 757 F.2d at 1364-66. Indeed, that there has been zero media interest in this case also completely undermines the government's preposterous suggestion that the jury should be told that the "protective measures are being taken due to anticipated media interest." Gov't Mot. at 15. This is especially the case when the only publicity in this case (which occurred in 2018) was at the hands of the United States Attorney's Office.

## Point II

**Partial sequestration in the midst of the COVID-19 pandemic must be denied.**

The government makes no specific argument related to its request for partial sequestration of the jury. While, generally, the Court considers the same factors in determining whether the jury should be partially sequestered (and an application of the same standard here should lead to the denial of the government's request), specifically in this case, there is even more reason to deny the request for sequestration because given the COVID-19 pandemic, it is effectively a request for Mr. Augustine's trial to be delayed.

In the COVD-19 pandemic, the CDC instructs people to stay at least 6 feet apart from everyone not in their household. The Eastern District of New York has made significant, difficult, and costly modifications to a courtroom to ensure this is possible while the jurors are in service. No such provisions have been made for the jurors who also have to travel to and from the courthouse with at least one person not in their household, and then remain with the other jurors at all times, as the government now proposes. This novel request by the government during the pandemic, with no suggestion of how the Court

should comply with that request, is a delay tactic and should be rejected as such.

Additionally, this court should be guided by its own decision in *United States v. Spicer*, 2013 WL 5278338 (E.D.N.Y. 2013), finding (in non-pandemic times) it appropriate to have an anonymous jury but denying the government's further request for sequestration, noting that "[t]he cost of sequestering a jury is not insubstantial." *Id.* at *3-4. As this Court noted, sequestration takes a significant fiscal toll on an already limited Judicial budget. In *United States v. Basciano*, 05-cr-60 (NGG) and *United States v. Wilson*, 04-cr-1016 (NGG), partial sequestration cost the Judiciary $3-4 million. *Id.* at *3.

**Point III**

**Partial sequestration would require the use of jury questionnaires.**

In the alternative, if this Court grants the government's request, then it should use jury questionnaires. "District courts routinely employ questionnaires to facilitate voir dire in a number of circumstances," including "where an anonymous jury is to be empaneled." *Quinones*, 511 F.3d at 299 (citing *Thai*, 29 F.3d at 801); *United States v. Dervishaj*,

2015 WL 3794803, at *1 (E.D.N.Y. June 17, 2015) (same). Anonymous juries and questionnaires go hand-in-hand: a questionnaire allows a more probing search for bias, and allows the parties to ask questions that couldn't be asked in open court (jurors' ages, occupations, places of residence, etc.) without rendering anonymity ineffectual. Second Circuit decisions upholding the empanelment of anonymous juries regularly note the use of a questionnaire. *See, e.g., United States v. Kaziu*, 559 F. App'x 32, 38 (2d Cir. 2014); *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013); *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2011); *Quinones*, 511 F.3d at 297; *United States v. Gotti*, 459 F.3d 296, 345 (2d Cir. 2006); *United States v. Rivera*, 60 F. App'x 854, 858 (2d Cir. 2003); *Thai,* 29 F.3d at 801; *Tutino*, 883 F.2d at 1133. And, questionnaires are common in terrorism trials, including most of the proceedings cited in the government's motion. *See, e.g., Pugh*, 150 F. Supp. 3d at 228 (questionnaire "is likely necessary" in light of anonymous jury); *id.*, 15 Cr. 116 (E.D.N.Y.), Dkt. Nos. 87 (Feb. 9, 2016) and 100 (Feb. 16, 2016); *United States v. Ghailani*, 98 Cr. 1023 (S.D.N.Y.), Dkt. No. 988 (July 30, 2010); *United States v. Stewart*, 02 Cr. 395 (S.D.N.Y.) Dkt. No. 375

(May 4, 2004); *United States v. Abdel Rahman*, 93 Cr. 181 (S.D.N.Y.), Oct. 4, 1994 Dkt. Entry.

**Conclusion**

For the foregoing reasons, the government's motion to keep secret the names of venire persons and jurors should be denied. Also to be denied is the government's request that jurors selected be kept together as a herd, in the middle of a pandemic, and escorted everywhere by a United States Marshal who comes in contact with prisoners. The government's requests are unsafe during the pandemic, costly to the Court and tax payers and not tailored to do anything other than scare away potential jurors and delay trial.

Dated: New York, New York
February 17, 2021

Respectfully submitted,

/s/

Allegra Glashausser
Sabrina Shroff
Samuel Jacobson
Attorneys for Bernard Augustine