Federal Defenders
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

February 24, 2021

By ECF and Email
The Honorable Sterling Johnson, Jr.
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Bernard Augustine, 18-cr-393 (SJ-RML)

Hon. Sterling Johnson:

A Protective Order was entered in this case on November 15, 2018, more than twenty-seven months ago. *See* Docket No. 25. The government has not, and cannot, point to any clearly defined, specific, and serious injury caused by any purported inadequacy or failure of the current Protective Order. Despite this, the government now asks the Court to sign a broad "Supplemental Protective Order" ("Proposed SPO") that would allow the government to turn any and all "information that the government deems in need of heightened protection" into so-called "Sensitive Discovery Material" ("SDM"). Proposed SPO ¶ 6.[1] Under the Proposed SPO, once information is unilaterally designated as SDM by government fiat, that SDM, or any documents containing that SDM, may only be shared with Mr. Augustine, any witness, or witness' counsel **in the physical presence of defense counsel or its staff**. The government's proposal makes no allowances for the reality that, given the on-going pandemic, defense counsel and its staff have not been able to physically meet with Mr. Augustine for many, many months. The order also proposes that no copies or notes of the SDM may be made by or for Mr. Augustine, any witness, or witness' counsel of any SDM. *Id.* ¶¶ 3, 5, 6.

The Court should deny the government's request. The current Protective Order has proven more than sufficient, and even provides that the government may seeks further protections "as to particular items of discovery materials." Given this, the

[1] Under the Proposed SPO, SDM can be any of six broad categories of information, including the unlimited catch-all category stated above. *See* Proposed SPO ¶ 6.

government fails to meet its burden of showing that good cause exists justifying entry of the Proposed SPO. Further, the government's glib assertion (February 2, 2021 Government Letter ("Govt. Ltr.") at 4) that the blanket restrictions imposed by the Proposed SPO will not unduly prejudice Mr. Augustine's defense is demonstrably false. As discussed at length at the February 8, 2021 detention hearing, even applying the proposed restrictions of the SPO to a very small subset of materials proved unworkable in practice. *See* 2/8/21 Tr. at 22:12-30:15. As the Court may recall, as defense counsel was unable to meet with Mr. Augustine in person, defense counsel was reduced to trying to read the 3500 material to Mr. Augustine over the phone. *Id.* To expand these unworkable restrictions to an unknown quantity of additional materials will irreparably harm Mr. Augustine's constitution right to a speedy and adequate defense.

## **DISCUSSION**

Under Federal Rule of Criminal Procedure 16, either party may – within the bounds of the Federal Rules of Criminal Procedure, the governing Rules of Professional Conduct, and the Local Rules of this Court – use discovery as necessary to represent and defend its interests in this proceeding. In limited circumstances, Rule 16 permits the entry of a protective order *but only when the moving party has made a showing of good cause*. *See* Federal Rule of Criminal Procedure 16(d)(1); *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987) ("A plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.").

What constitutes "good cause" is not expressly defined by Rule 16, but at the very least, to show good cause for further restricting access, the government must show the Proposed SPO is necessary to prevent a "clearly defined, specific and serious injury." *United States v. Johnson*, 314 F.Supp.3d 248, 255 (D.D.C 2018), *quoting In re Terrorist Attacks on September 11, 2011*, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted); *see also United States v. Concord Mgmt. & Consulting LLC*, 404 F.Supp.3d 67, 74 (D.D.C 2019) ("Good cause for a protective order 'is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.'") (internal citation omitted). In showing good cause, the government may not simply rely on amorphous concerns, raw speculation, or conclusory statements. *United States v. Smith*, 985 F.Supp.2d 506, 523 (S.D.N.Y. 2013). Rather, a sufficient showing of good cause "must be based on a particular factual demonstration of potential harm." *Id.* (*quoting United States v.*

*Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)). Here, the government has failed to show good cause for amending or supplementing the current Protective Order.

The government contends that the Proposed SPO is needed to protect the "privacy and security interests of the government and of third parties." Govt. Ltr. at 4. The government is wrong. These two purported government concerns already are addressed by the current Protective Order and the government has failed to identify, with the requisite specificity, any documents that would create the defined, specific and serious injury to the government that would justify entry of the Proposed SPO on top of the current Protective Order.[2]

As to the government's purported privacy concerns, the government states "the purpose of pretrial discovery is solely to prepare a defense, [and] discovery materials provided by one party or another should not be disseminated before trial to members of the public." Govt. Ltr. at 3. The current Protective Order, however, already provides that "[a]ny and all discovery material … may be used by defendants and defense counsel only for purposes of preparing and defending the case, including but not limited to trial, sentencing, any appeal and any collateral attack, involving the charges in the above-captioned case." Protective Order ¶ 1. Further, the current Protective Order provides for the redaction of any and all identifying information from discovery material. *Id.* ¶ 3. Finally, the current Protective Order requires the return of the discovery material upon completion of the legal proceedings. *Id.* ¶ 6. This is sufficient here. Notably, the government does not even contend that, at any time in the past 27 months, there has been any improper public dissemination of discovery material in violation of the current Protective Order here. If there had been, the government would have sought sanctions, and/or "the immediate destruction of or return to the United States of the discovery material," as provided by Paragraph 7 of the current Protective Order. The fact that the government has not done so

---

[2] In addition to the existing Protective Order, the New York State Rules of Professional Conduct and the Federal Rules of Criminal Procedure preclude the defense from revealing an individual's identifying information. For example, Rule 49.1 of the Federal Rules of Criminal Procedure prohibits the defense from disclosing an individual's social-security number, taxpayer-identification number, or birth date, names of minor children, financial account numbers, and home addresses. Rule 4.4 of the New York State Rules of Professional Conduct makes clear that "a lawyer shall not use means that have no substantial purpose other than to embarrass or harm a third person…" EDNY Local Criminal Rule 23.1(a) states, "It is the duty of the lawyer …., *not to release or authorize the release* of non-public information or opinion which a reasonable person would expect to be disseminated by means of public communications, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice" (emphasis added). The government fails to demonstrate that these existing protections are insufficient here.

conclusively shows the lack of any violation of the current Protective Order and the absence of any actual injury.[3]

Plainly, the current Protective Order already prevents public dissemination of discovery material and protects identifying information from disclosure. In any event, the Proposed SPO is not truly aimed at preventing dissemination of documents to members of the public; its entire purpose is to restrict how so-called SDM is shared with Mr. Augustine and any potential and actual witnesses in the case, by forbidding the making of copies or notes and requiring defense counsel's physical presence. *See* Proposed SPO ¶¶ 6-8.[4]

The government's contention that witness safety and national security support entry of the Proposed SPO (Govt. Ltr. at 2-3) is equally unpersuasive. The government has identified no witness who has been harmed or threatened as a result of prior discovery production in this case. Nor, given that Mr. Augustine has been imprisoned for the last five years, can the government properly contend that there are ongoing national security concerns or investigations that would be impeded by the parties continuing to operate under the current Protective Order.

To the extent that a handful of truly sensitive documents may exist in this matter (and the government has identified none to date), Paragraph 4 of the Protective Order states that the government may seek "a further protective order pursuant to Rule 16(d) as to particular items of discovery materials." Thus, if the government finds a particular document or item requires additional protections it may always identify that particular item to the Court, and provide specific facts

---

[3] The government does complain that "defendant has demonstrated a repeated propensity to file documents on the public docket, including previously provided discovery material." Govt. Ltr. at 3. The few instances cited by the government, however, all involve filings relevant to Mr. Augustine's defense and the few documents submitted were all carefully redacted to remove identifying information. Certainly, the government never sought to strike such materials from the docket. Nor has the government identified any injury resulting from those few documents being placed on the docket in support of Mr. Augustine's defense. As explained herein, the proper recourse for the government purported concerns is for the government to identify and seek special protection for any handful of 3500 material the government believes needs it (*see* Protective Order ¶ 4), not seek a new and improper Proposed SPO.

[4] The government cites a handful of cases that recognize that discovery materials should be used for to assist in trial preparation, and not for publicity or other non-trial purposes. *See* Govt. Ltr. at 3, citing *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 31-33 (1984); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *United States v. Smith*, 985 F.Supp.2d 506, 519 (S.D.N.Y. 2013); and *United States v. McVeigh*, 918 F.Supp. 1452, 1460 (W.D. Okla. 1996). This unremarkable proposition, however, is already part of the current Protective Order (at ¶ 1).

showing why that particular item requires additional protections. The government has never done so. Instead, it asks for the raw and unfettered power to broadly designate an unknown amount of as yet-unidentified and unproduced documents as SDM without having to first show good cause for additional restrictions. *See* Proposed Order ¶ 6. The government's proposal – allow it to restrict first, and then identify the documents and try to show good cause later – is improper and contradicts Rule 16.

In *United States v. Palmer*, No. 10 CR 910 JSR, 2011 WL 672412 (S.D.N.Y. Feb. 14, 2011) – cited by the government in page 4 of its letter – Judge Rakoff imposed restrictions on the dissemination of certain 3500 material, but he did not do so on a blank slate. Instead, Judge Rakoff examined the contested material at issue and confirmed the requested restrictions were necessary. *Id.* *1, Further, Judge Rakoff specifically noted that defendant Palmer would not be prejudiced by the added restrictions because the contested "material is far from voluminous, consisting only of one 2-inch binder's worth of materials." *Id.* *1-2. Here too, the government should be required to identify any specific documents purportedly requiring additional restrictions and show good cause before additional restrictions are imposed. This is the very procedure provided for under the current Protective Order, and no Proposed SPO is needed or appropriate here.

Most damning to the government's request, the government fails to identify any failure of the current Protective Order that has led to any actual concrete and particularized harm to anyone or anything. After 27 months under the current Protective Order, all the government can point to is vague and speculative concerns. This is not enough. *See, e.g., Concord Mgmt. & Consulting LLC*, 404 F.Supp.3d at 74 (requiring proof of "a clearly defined and serious injury" in absence of potential harm, not [] conclusory statements") Simply put: the government has failed to meet its burden of showing good cause for entry of the Proposed SPO. For this reason alone, the government's request should be denied.

By contrast to the lack of harm and lack of good cause, the restrictions imposed, given the pandemic and the current condition of the prison system, will significantly and improperly impair any ability to prepare Mr. Augustine's defense. The Court is well-aware of how prejudicial and unworkable the restrictions proved to be, when applied even on a limited basis to a small subset of 3500 material in advance of the February 8, 2021 detention hearing. See 2/8/21 Tr. at 22:12-30:15. Defense counsel was reduced to trying to read the 3500 material to Mr. Augustine over the phone. *Id.* To expand these severe restrictions to an unknown amount of material that has been unilaterally identified as "sensitive" by the government would violate Mr. Augustine's constitutional right to a speedy and adequate defense.

## CONCLUSION

Because (i) a Protective Order already exists that provides sufficient protections; (ii) the Proposed SPO would impede the defendant's efforts to prepare a defense; and (iii) the government has failed to show good cause; the government has failed to meet its burden of justifying entry of the Proposed SPO. For all these reasons, the government's motion should be denied.

Respectfully submitted,

/s/

Allegra Glashausser
Samuel Jacobson
Sabrina Shroff
Counsel to Bernard Augustine

cc: all counsel of record (via ECF)