UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x

18-CR-393(SJ)(RL)

UNITED STATES OF AMERICA,

Plaintiff,

-against-

BERNARD AUGUSTINE,

Defendant.

------------------------------x

United States Courthouse
Brooklyn, New York

July 12, 2021
1:00 p.m.

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES

For the Government: UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: JOSHUA G. HAFETZ, ESQ.
JONATHAN EDGAR ALGOR, IV, ESQ.
Assistant United States Attorneys

For the Defendant: BERNARD AUGUSTINE, PRO SE.
- and -

Standby Counsel: SUSAN GAIL KELLMAN, ESQ.
25 Eighth Avenue
Brooklyn, New York 11217
BY: SUSAN GAIL KELLMAN, ESQ.
- and -
GARY S. VILLANUEVA, ATTORNEY AT LAW
11 Park Place
Suite 1601
New York, New York 10007
BY: GARY S. VILLANUEVA, ESQ.

Court Reporter: LINDA D. DANELCZYK, RPR, CSR, CCR
Phone: 718-613-2330
Fax: 718-804-2712
Email: LindaDan226@gmail.com

Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transcription.

(In open court.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Please have a seat.

MR. HAFETZ: Good afternoon, Your Honor. Josh Hafetz and Jonathan Algor for the United States.

MS. KELLMAN: Good afternoon, Your Honor. Susan Kellman and Gary Villaneuva for Mr. Augustine, who is present.

(Court reporter interrupts.)

MS. KELLMAN: Oh, it's on now.

THE COURT: All right. Try again.

MS. KELLMAN: Thank you. Good afternoon, Judge. Susan Kellman and Gary Villaneuva. We're here to assist Mr. Augustine. Good afternoon, Judge.

THE COURT: Good afternoon, Mr. Augustine and Mr. Villaneuva.

MR. VILLANEUVA: Good afternoon, Your Honor.

THE COURT: Mr. Augustine, you're representing yourself?

MR. AUGUSTINE: Yes, Judge.

THE COURT: All right.

So this hearing today has to do with the request that had previously been filed for a supression -- for supression of certain statements that were made.

I understand that there was some question, Mr. Augustine, whether you wanted to continue with that

motion.

MR. AUGUSTINE: No, I don't want to continue with that motion. I want to withdraw that motion. Those statements were not coerced. I made those statements voluntarily.

THE COURT: All right.

And have you consulted with your backup counsel on this issue?

MR. AUGUSTINE: Yes, sir.

THE COURT: Ms. Kellman and Mr. Villaneuva?

MS. KELLMAN: Yes, Your Honor.

MR. VILLANEUVA: Yes, Your Honor.

THE COURT: And are you satisfied that Mr. Augustine's withdrawal is given with full knowledge of the potential consequences of his doing so?

MS. KELLMAN: I believe so, yes, Judge.

MR. VILLANEUVA: Yes, Your Honor.

THE COURT: And that it's voluntary rather than coerced?

MS. KELLMAN: The coercion was another way we tried to get him to change his mind, but no. It was completely voluntary, Judge.

THE COURT: All right. Okay.

So, Mr. Augustine, you understand that it is possible -- well, let me ask you -- why don't we start with

the government.

For what purpose would the statement at issue be used?

MR. HAFETZ: Your Honor, as set forth in our papers, the statement would be used only for the purpose of impeachment if Mr. Augustine were to testify.

THE COURT: Okay.

All right, and do you understand what that means, Mr. Augustine?

MR. AUGUSTINE: Yeah, that, if I'm not mistaken, it means that if I testify and they want to contradict whatever I've testified to, they can bring that up.

THE COURT: Is that correct?

MR. HAFETZ: I think that's an accurate assessment, Judge, yes.

THE COURT: I think it is, too.

All right. And so do you understand that it could be to your detriment, not to your benefit, to have that statement potentially available to the government in the event that your testimony or your recollection of events is different?

MR. AUGUSTINE: Yeah, I understand.

THE COURT: And do you understand it could be an important aspect of the trial and of your innocence and guilt, that determination?

MR. AUGUSTINE: Yeah, I understand.

THE COURT: All right.

And do you feel that you fully and thoroughly discussed this issue with the -- with Ms. Kellman and Mr. Villaneuva?

MR. AUGUSTINE: Yeah, I discussed it with them.

THE COURT: And did you discuss it also with prior counsel?

MR. AUGUSTINE: Yeah. Yeah, I did.

THE COURT: All right.

So, Ms. Kellman, how -- do you believe that Mr. Augustine has fully aired all the potential consequences and fully understands the consequences of his decision?

MS. KELLMAN: I believe that he has, Your Honor, but perhaps Mr. Villaneuva can add to it, since I know he saw him most recently.

THE COURT: Mr. Villaneuva?

MR. VILLANEUVA: Yes, Your Honor. Mr. Augustine's position is firm. I believe he does understand the consequences of his actions. And to the extent that his firm decision is made, I believe it's voluntary and not coerced.

THE COURT: All right.

Does the government have any concerns or questions at this time?

MR. HAFETZ: No, Your Honor. Thank you.

THE COURT: All right.

So, Mr. Augustine, we had a hearing already before at which the Court determined or recommended to Judge Johnson that you be permitted to represent yourself, because it was clear after a very detailed series of questions that you fully understood the seriousness of the charges against you; the difficulty of representing one's self at trial; the complexity of the criminal law, and the Federal Rules of Evidence; the federal statutes, criminal statutes, et cetera, and I find that you fully did understand and appreciate all the risks that you were facing.

Today's hearing really is a corollary to that. What it does is it increases the risk or it potentially doesn't eliminate a potential risk that you might face in the event your recollection or your testimony is different from the statement that was written down and that was originally to be challenged in a supression motion, and so it could further jeopardize your position at trial not to have an opportunity to have that statement suppressed if, in fact, it should be suppressed.

Do you understand that?

MR. AUGUSTINE: Yes, Judge, I understand.

I've been telling the truth about this thing from day one, so there is nothing that could change from what I'm saying.

THE COURT: No, I understand. And I appreciate the consistency with which you have maintained that those statements were not coerced. And I know you've been given your Fifth Amendment warning on that as well, and that you know that any statements that you make here could be used against you.

And I'm sure, Ms. Kellman and Mr. Villaneuva, you advised Mr. Augustine as well that any statement he makes as to the accuracy or the voluntariness of the statements at issue could be used against him.

MS. KELLMAN: Yes, Your Honor.

THE COURT: All right. So I find that you have knowingly and voluntarily withdrawn your motion to suppress the statements for the reason that you believe that the statement at issue is -- was not coerced and is true.

So, therefore, the Court will not make a decision or a report and recommendation to Judge Johnson as to whether or not the statement should be suppressed.

Do you fully understand the consequences of the Court's ruling?

MR. AUGUSTINE: Yeah, I understand.

THE COURT: Okay.

Is there anything else from the government?

MR. HAFETZ: No, Your Honor, thank you, not at this time.

THE COURT: All right.

Mr. Augustine, any other issues for the Court today?

MS. KELLMAN: There is one issue, Your Honor.

Mr. Augustine has been in the SHU for the last week or so and he has had no access to his discovery at all. And I was wondering if I prepare an order that would allow us to buy him a laptop that the government could load the discovery, I think that would be probably the most efficient and the quickest way to get all the discovery in one place at one time for him.

I don't know if government has an extra laptop. I can check with Allen Nelson, who is supposedly adept of the repository of laptops that have been used during the pandemic, and if they are no longer used, Mr. Nelson I can check with him, if he has one; if not, then with Your Honor's permission buy one, to reduce it to an order, and if Your Honor would sign it, we could get him -- get the government a laptop and then they could load it. And I think they have to deliver it to the jail. And if they would do that, then we know that he has a full set of the discovery in the SHU with him.

THE COURT: Why has he been in the SHU so long?

MS. KELLMAN: It think he's just recently gone into the SHU. I don't know --

MR. AUGUSTINE: I've been there for three weeks. I mean, the last I spoke to the MDC official supervising the

SHU, they said I could be there up to two or three months. So it was just fighting an issue. You know, MDC is becoming increasingly violent. It's almost impossible to avoid.

THE COURT: I see. Your objection is not to the SHU but to the lack of availability --

MR. AUGUSTINE: Access to discovery.

I wrote to them. They have my CD over there at MDC, but they just ignore me. I've written multiple requests to view the discovery, but they just ignored it.

THE COURT: Does the court have laptops that might be available in a situation like this?

MS. KELLMAN: I think that Allen Nelson would be the person who would know the answer to that question. And I've talked to him about it on two other cases, and he did not have them but it was several months ago. So if the other cases have been completed and the instruction or argument that we made was if they were no longer needed, they were to be returned to Mr. Nelson.

I could check with him and see if he has any; if he doesn't, then I could prepare an order that would permit me to buy one. And when we are finished -- the order also includes language that when we're finished with the computer, to be returned to Mr. Nelson.

THE COURT: Of course.

Does the government ever hand out spare computers in

a situation like this, as a means of transporting, as if it were, an electronic envelope?

MR. HAFETZ: I believe that may have happened actually in another case that I have with Ms. Kellman where we provided a temporary laptop to be used for the defendant to review discovery.

I have no issue with conferring with defense counsel about whether, one, our office can provide one, or whether Ms. Kellman could retain one either through Mr. Nelson or purchasing it to be reimbursed by whoever does that.

I'll just point out, the only issue that we do not have control over, and we'll speak to the MDC about it, is once the laptop is delivered, I don't know what the protocol is, sitting here today, for using the laptop are while he's in the SHU. But we will endeavor to find that out.

THE COURT: Well, if he can't use it while in the SHU, what can he do?

MR. HAFETZ: That's what we will find out, Judge.

MS. KELLMAN: Your Honor, I have two clients in the SHU who have been using laptops. They say they can have them two hours a day but, frankly, they just give it to them in the morning and they collect them in the evening so that they can charge them overnight and then they return them in the morning.

THE COURT: Okay.

How voluminous is the discovery?

MR. HAFETZ: There's a significant amount of data, Your Honor, from electronic devices and other materials.

THE COURT: And what's the trial date?

MR. HAFETZ: August 2nd.

THE COURT: Still?

MR. HAFETZ: Correct.

THE COURT: Okay. Will this affect the trial date?

MS. KELLMAN: I don't anticipate that, Judge.

MR. AUGUSTINE: I'll wing it. Like if it's going to push the trial date back, I'll wing it. I really just need to find locations and review some part of the discovery. But if I have to do it on the last day, I'll wing it. I don't want to push the trial date.

MR. HAFETZ: And to be clear, Judge, just for the record, the discovery, the vast majority, the vast, vast majority of the discovery in this case has been made available to Mr. Augustine and his prior counsel for years now.

THE COURT: Okay, but this is critically important.

MR. HAFETZ: Understood.

THE COURT: As, obviously, you all know.

All right, so at this time you don't need an order from me.

MR. HAFETZ: I don't think so, Judge. We'll confer with counsel about figuring out what machine to use and we'll

load that discovery on forthwith.

THE COURT: Okay.

All right, anything else?

MS. KELLMAN: Just one thing further, Judge. I know that there is a discussion that needs to happen between the government and our client, or Mr. Augustine, and so we were wondering if we could use your courtroom for the next five minutes.

THE COURT: I have no problem with that.

MR. HAFETZ: Thank you, Judge.

THE COURT: Okay. Thank you.

MS. KELLMAN: Thank you, Judge.

(Whereupon, the matter was concluded.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/ Linda D. Danelczyk July 14, 2021

LINDA D. DANELCZYK DATE