UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA, | : 18-CR-393 (SJ) |
| Plaintiff, | : |
| -against- | : United States Courthouse<br>: Brooklyn, New York |
| BERNARD AUGUSTINE, | : |
| Defendant. | : Wednesday, February 17, 2021<br>: 12:00 p.m. |

- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE STERLING JOHNSON, JR.
UNITED STATES DISTRICT SENIOR JUDGE

A P P E A R A N C E S:

For the Government:
SETH D. DuCHARME, ESQ.
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: CRAIG R. HEEREN, ESQ.
JONATHAN E. ALGOR, IV, ESQ.
JOSHUA G. HAFETZ, ESQ.
Assistant United States Attorneys

For the Defendant:
FEDERAL DEFENDERS OF NY, INC.
One Pierrepont Plaza
16th Floor
Brooklyn, New York 11201
BY: SAMUEL I. JACOBSON, ESQ.
ALLEGRA W. GLASHAUSSER, ESQ.

AND

LAW OFFICES OF SABRINA P. SHROFF
233 Broadway
New York, New York 10007
BY: SABRINA P. SHROFF, ESQ.

APPEARANCES (CONTINUED)

Court Reporter: DAVID R. ROY, RPR
225 Cadman Plaza East
Brooklyn, New York 11201
drroyofcr@gmail.com

Proceedings recorded by Stenographic machine shorthand, transcript produced by Computer-Assisted Transcription.

P R O C E E D I N G S

--ooOoo--

(In open court.)

THE COURTROOM CLERK: Call for United States versus Augustine, 18-CR-00393.

THE COURT: Counsel, note your appearances, beginning with the Government.

MR. HEEREN: Yes, good afternoon, Your Honor. This is Craig Heeren for the United States. With me are my colleagues Joshua Hafetz and Jonathan Algor.

THE COURT: Okay.

Okay. Is Harry Rucker there?

MR. RUCKER: Hi, Judge, I'm here.

THE COURT: Okay.

MR. JACOBSON: And --

THE COURT: And who?

MR. JACOBSON: Good afternoon, Your Honor. Sam Jacobson, Allegra Glashausser, and Sabrina Shroff Federal Defenders for Mr. Augustine who, I believe, is present on the line with us.

THE COURT: Okay.

All right. What's the --

MR. JACOBSON: And I just --

THE COURT: Go ahead.

MR. JACOBSON: I just wanted to note briefly, Your Honor, we, as usual, were scheduled with a call for Mr. Augustine 15 minutes prior to court, but MDC was not able to provide us with that call. So I'm not sure that Mr. Augustine knew of today's court appearance and certainly doesn't know what we're here to discuss. So you will have to bear with us if Mr. Augustine has questions or he needs to talk to his counsel along the way.

THE COURT: What do you suggest; do you want to put it over or do you want to --

MR. JACOBSON: No, Judge, we're prepared to proceed; and we wanted to confirm with Your Honor that we are ready to go forward with the trial on March 3rd or March 10th, which was the date provided by the Court's deputy.

THE COURT: Okay. But it is my understanding that there is a motion to suppress pending; is that correct?

MR. JACOBSON: There is, Judge, but there's no reason that that would delay the trial for a number of reasons.

The first reason is that it's always been Mr. Augustine's position that that hearing is not necessary on the motion to suppress. If the Government or Judge Levy believes that a motion would be helpful for a decision on that motion, a hearing would be useful, we are happy to proceed with the hearing. But the plan has always been that the suppression hearing would take place a week or two prior to the trial because the suppression hearing witness is a government witness who would be testifying at trial as well, so the idea was to join the suppression hearing to the trial date. So it's not as if the suppression hearing is going to take place months before the trial date. It was always supposed to happen consecutively in close proximity.

So we're ready to proceed on March 3rd or March 10th, and if the Government makes the suppression hearing witness available, we can do the suppression hearing a few days prior to the jury selection.

THE COURT: Well --

MR. HEEREN: Your Honor --

THE COURT: Yes. Go ahead.

The suppression hearing, the magistrate has to write a report and recommendation, and then both sides have ten days to object to it. So I do not see how we can go to trial on March 10th with, you know, the suppression hearing pending.

MR. JACOBSON: Your Honor, I think --

THE DEFENDANT: Can I speak --

MR. JACOBSON: -- Judge Levy --

THE DEFENDANT: Hello?

MR. JACOBSON: -- had discussed --

THE DEFENDANT: Please, can I speak?

MR. JACOBSON: Let me just finish my thought --

THE DEFENDANT: Well --

MR. JACOBSON: -- Bernard.

THE DEFENDANT: -- you're --

MR. JACOBSON: I believe Judge Levy had --

THE DEFENDANT: -- doing something that I don't want you to do. I want a trial.

(Simultaneous cross-talk. The reporter unable to discern.)

THE COURT: Maryelle, mute. Mute him.

THE COURTROOM CLERK: Oh, yes, Judge.

MR. JACOBSON: Judge, if we -- we would ask that he not be muted because, you know, he does -- Mr. Augustine is correct, which is that he doesn't want the suppression

hearing to delay his trial, and it shouldn't delay his trial, because it's the same Government witness that would be testifying that has to travel into the country for trial. So we are not going to have that witness available months prior where Judge Levy would issue an R and R and the parties would respond. So Your Honor had actually proposed that you would do the suppression hearing just a day or two before trial so that it wouldn't be necessary to have an R-and-R issue and wait for the parties to lodge objections to the R and R, and we could do it in an efficient, speedy manner right before the trial was to commence.

MR. HEEREN: Your Honor, may we --

THE COURT: Well, it is up to Judge Levy.

Does the Government wish to be heard, or did you say something?

MR. HEEREN: Yes, Your Honor. I apologize. So I just want to clarify a few things.

Mr. Jacobson omits that the Court at the last status conference did schedule a trial date for August 2nd of 2021. The Government has no objection to that date, and we think that is a good date given the complexity of this trial, which includes not just a suppression hearing and witnesses. And I would note that Defense Counsel is wrong. There are actually three witnesses that would be needed for a suppression hearing, two of which are located outside of

the country. But also that this is a complex case that involves potential CIPA practice.

And the other issue, Your Honor, is that the Government is requesting an anonymous and partially sequestered jury, and that is on top of --

THE COURT: And the --

MR. HEEREN: -- and this is on top of --

THE COURT: Just a second.

The defendant has not responded to that either?

MR. HEEREN: No. There are several motions which are pending which there have been no responses to yet.

THE COURT: Okay. Go ahead.

MR. HEEREN: We laid this all out in a letter, Your Honor, we filled last night. I apologize for the filing right before the status conference, but it lays it out a little bit more clearly.

But, Your Honor, this is a case that involves, we estimate at this point, 20 witnesses. Given the protocols that will need to be in place, we think that this trial while maybe in normal times would take two weeks, we think it is going to take closer to three weeks. In addition to the pending motions which you have mentioned, there is also a protective-order motion and also the R and R that Judge Levy already wrote that remains pending.

And then, Your Honor, just there's sort of the

logistical and practical issues here, which is because our witnesses in this case all come from places like California or outside the country, there are a lot of complications regarding quarantine, among other issues, to say nothing of the courtroom setup for the jury and in order to publish the audio, video, and photographs that are going to be necessary for this case.

And, you know, just to kind of give by way of example with the anonymous jury, we would recommend a jury questionnaire with the anonymous jury. And in a similar case, *U.S. v. Pugh*, that was before Judge Garaufis, one of the more recent terrorism trials where there was an anonymous jury with a questionnaire, it took the judge several days -- it took the judge four days to select the jury after the questionnaires were given to the jurors. So all of which is just to say this is a fairly complicated trial on logistical measures, and it's made more complicated by COVID.

And so we think the date that the Court previously scheduled, which is August 2nd of 2021, is entirely appropriate, and we think that would be a good, firm deadline and we will be ready to go.

THE COURT: All right.

MR. JACOBSON: Judge --

THE COURT: Does the defense want to be heard?

MR. JACOBSON: Yes, I do. Thank you very much, Judge. And I have a few points to make.

The first is that, as the Court is aware and we say at every appearance, Mr. Augustine has been detained in this case for five years now come February 24th. He should be at the front of the list for jury trials in this district. He has continuously and consistently objected to any further exclusions of time in this case. And when the Government mentions pending motions, those motions have been -- for example, the motion to dismiss, that motion has been fully briefed for a year and a half now, and the R and R from Judge Levy issued on September 8th. So we don't see that as a basis for further delay of this trial, Your Honor.

Now, at the last status conference, Your Honor did mention the potential August date, but trial wasn't set for that date. In fact, Your Honor said if we could find an earlier date given the length of Mr. Augustine's pretrial incarceration, we would grab that date and proceed with trial. We now have such a date, which was provided, the March 3rd or March 10th date. There are no other trials in the district set for that date.

I also think it's important that -- we have found at least ten other trials in this district that are currently set for March or April, and those are cases with

19-CR numbers, cases even more recent than that where people are either out on bail or have been detained for far less time than Mr. Augustine's has been detained, and that includes a case that is set for trial for April before Your Honor. So it's just not just that Mr. Augustine's trial would be delayed many months beyond that for someone who has been detained as long as he has, for someone whose motions have been pending for a year and a half now.

And I heard the Government, Judge --

THE COURT: I herd someone mention that there was a report and recommendation. I have not seen it.

Do you have a copy of it?

MR. JACOBSON: Yes, Judge, it's on the docket. We can provide it to Chambers today. It's a report and recommendation from Judge Levy dated September 8th regarding Mr. Augustine's motion to dismiss the indictment.

THE COURT: Well, it might be --

MR. JACOBSON: The other motion that --

THE COURT: Just a second.

It might be dated September the 8th, but I have not received it yet.

MR. JACOBSON: And the parties also lodged objections and the defense also replied after the Government responded. So that is all fully briefed and ripe for Your Honor's decision.

The other motion that the Government just filed a few days ago is a request for an anonymous and sequestered jury, and we can file our response to that today, Judge. It's an easy motion to decide, and it's an easy motion to decide because they filed this motion just to delay; and they filed this motion only after the March 3rd or March 10th date was proposed; and they filed this motion because they are not ready for trial. Your Honor has rejected similar motions from the Government in the past. There was a case, *Spicer,* where an individual was a high-level gang member and there were safety concerns, and Your Honor still rejected the Government's motion for an anonymous and sequestered jury. And there is just no basis for an anonymous or sequestered jury here.

The Government references media attention, but there has been no media attention in this case. Every court appearance, the courtroom has been empty, and this is not a big, salacious case --

THE COURT: You do not think that there will be any media attention in the case?

MR. JACOBSON: I think there will be media attention for any trial that happens after the COVID restrictions are lifted. But I don't think there is anything particular about this sort of run-of-the-mill travel charge. And there is certainly no threat from

Mr. Augustine who has never been a member of ISIS, never joined ISIS, doesn't known anyone in ISIS, has no connections to anyone affiliated with ISIS. So there are simply no safety concerns either. And because we have Mr. Rucker on the phone today, we can use today as a CIPA Section II Conference and resolve all of those issues before we go to trial in the next few weeks.

You know, the Government said this is a complex case. We've objected to that as well in the past. We don't see any complexity here. If the Government says that there are 20 witnesses, they should produce that witness list. It's not clear who they are actually going to call, but they have referenced witnesses in California, which should be easy for them to get here in time for a trial that starts in early March.

So, you know, for those reasons, Judge, we think we're ready to proceed. The Government has --

THE COURT: Okay.

MR. JACOBSON: -- ample ways --

THE COURT: Okay. Your objection is noted.

Mr. Rucker, you wanted to say something?

MR. RUCKER: Your Honor, I don't have any input right now.

THE COURT: Okay.

Then what are the other motions, motion for

partially anonymous jury?

MR. JACOBSON: Yes.

THE COURT: What else?

MR. JACOBSON: And we can respond to the anonymous jury motion today, Your Honor; and I would expect the Court to deny it as the Court has denied other similar motions in the past.

THE COURT: What other motion --

MR. JACOBSON: The other motion is the motion to dismiss, which has been fully briefed for a year and a half with the R and R from Judge Levy. And then the only other outstanding motion is the motion to suppress. And I guess as the Court suggested, we could do that even the day before jury selection before Your Honor.

THE COURT: Okay. I'm going to --

MS. SHROFF: The protective order --

(Simultaneous cross-talk. The reporter unable to discern.)

THE COURT: Just a second.

What? Who is this?

MR. JACOBSON: Your Honor, this is --

MS. SHROFF: Sabrina Shroff.

The last motion that is pending is the order -- the motion for protection order. I was just reminding the Court.

THE COURT: Now, who is this speaking?

MS. SHROFF: This is Sabrina Shroff, Your Honor. I'll the third lawyer on the Augustine trial team.

THE COURT: And what did you say?

MS. SHROFF: I was just reminding the Court that there is also a motion for a protective order, which the Court is aware of because you mentioned it the last time. I was just reminding you of the last motion pending, Your Honor.

THE COURT: Okay. I am going to reserve decision on this, and I will let the parties know.

MR. HEEREN: Thank you, Your Honor.

Your Honor, may I make -- and I'm sorry, this is Craig Heeren for the Government. May I be heard for one second on the anonymous jury? I just want to respond to one point.

THE COURT: Yes.

MR. HEEREN: Your Honor, this is not a delay tactic. An anonymous and partially sequestered jury is used routinely in terrorism cases. I believe it has been used in all of the most recent terrorism cases in this court.

And I would note when they say no security concerns, this is not a run-of-the-mill case. This is a person who tried to join ISIS and traveled to go and join ISIS and be a martyr for ISIS in Libya. There is a real

security risk here. And, in fact, one of the last trials that involved a terrorism case, a case called *Farekh* before Judge Cogan when there wasn't partial sequestration, the defendant's father confronted jurors, and we had a real issue as a result, so...

The most analogous case, as I mentioned before, is *Pugh*, P-U-G-H, a similar case where a defendant travelled to join ISIS. That was before Judge Garaufis, and Judge Garaufis, I think correctly, ordered an anonymous and partially sequestered jury supplemented by jury questionnaires. I think that it the appropriate process in a terrorism case.

And I would note, just two other corrections: One, there has been media attention when Mr. Augustine was first arrested. I have no doubt that there will continue to be media attention when the media becomes aware of the fact that a terrorism trial is going to go forward in 2021.

And with regard to his time in custody, he has been in the United States since 2018, for three years. He was in Tunisian custody for two years serving a sentence when they convicted him for a terrorism trial.

MS. SHROFF: Your Honor --

MR. HEEREN: That is all I have, Your Honor.

MS. SHROFF: -- this if Sabrina Shroff.

THE COURT: All right. I'm going to reserve --

MS. SHROFF: May I just briefly respond to the three things that the Government has said?

First, I just want to note that the *Farekh* case, Mr. Farekh's father lived in New York. Mr. Augustine's father does not live in New York, and Mr. Augustine's family does not live in New York. Mr. Augustine's family is noted by the Government as their witnesses, as Government witnesses. Is the Government really telling this Court that all the people they are planning to call as witnesses are such people that they would threaten a jury sitting in the same case? This same Government has reached out to Mr. Augustine's mother and his sisters and said that they are planning to call them as witnesses. So that belies any contention that any family member would react the same way as Farekh's father reacted in that trial.

Secondly, on the *United States versus Pugh*, Pugh was a member of the United States Military. He was a 40-year-old man who had served in combat, had AK-47s, had obstructed justice, had emails obstructing justice. So *Pugh* is a totally different type of case, nothing like the case here.

And finally, is Mr. Herren really telling this Court that this case is so complex that for three years he has not managed to tell you what motions he has filed? For three years that he's had this case, he can't tell you what

motions he can finish in three years?

What is the difference between three years and five years in prison? Two years. Is the Government really saying that a speedy-trial clock should be held for three years because they find the case complex and the case involved one 19-year-old traveling allegedly to a foreign national -- to a foreign country? Look, none of these arguments make any sense. If any of these threats were real, the Government would have been able to prove it.

And I just want to say one last thing, Your Honor: The Government had a whole hearing before Judge Levy arguing that Mr. Augustine was, quote/unquote, "dangerous." They said they were going to call a witness. Did the witness show up? No. Did the witness say to the Government he was dangerous? No. The witness, in fact, told Mr. Jacobson and me that he had spoken to the witness in 2020, and that Mr. Augustine was a very good kid who was not dangerous at all. So the facts belie everything that the Government is telling this Court.

And most respectfully on behalf of Mr. Augustine, we ask you to consider setting a very early trial date. The defense is ready to go on March 3rd.

Thank you, Your Honor, for letting me speak.

THE COURT: Okay. Now, who was this that just spoke?

(No audible response.)

THE COURT: Who was this that just spoke?

MS. SHROFF: This is --

THE COURT: Who was this?

MS. SHROFF: I am Sabrina Shroff, Your Honor. I'm the third lawyer on Mr. Augustine's team.

THE COURT: Okay.

All right. As I said before, I am going to reserve decision and I will let you know.

Okay. Give me a status conference in two weeks, Ana (sic).

THE COURTROOM CLERK: Okay, Judge --

THE DEFENDANT: Judge, this is Bernard Augustine. May I speak?

THE COURT: No.

Go ahead, Ana.

THE DEFENDANT: I seem like I really need to speak about --

THE COURT: No.

Ana --

THE DEFENDANT: It's my right.

THE COURT: Ana, mute him. Mute him.

THE DEFENDANT: It's my right.

THE COURT: I mean, Maryelle, mute him.

THE COURTROOM CLERK: Okay.

How about Wednesday, March 3rd -- I'm sorry -- yes, Wednesday March 7th at noon?

THE COURT: Okay. Good.

All right.

MS. GLASHAUSSER: I'm sorry. This is Allegra. March 7th is --

MR. JACOBSON: That's a Sunday.

MS. GLASHAUSSER: -- a Sunday.

THE COURTROOM CLERK: I'm sorry.

MS. GLASHAUSSER: And, Your Honor -- I'm sorry. This is Allegra.

This is our second status conference in two weeks to set the trial date, and this has -- we have been asking for the trial date since last August. So --

THE COURT: You're on the record --

MS. GLASHAUSSER: -- I understand that you're --

THE COURT: You are on the record. You have objected to it, but that is the date.

THE COURTROOM CLERK: I apologize.

MS. GLASHAUSSER: I apologize, Your Honor. What is the date?

THE COURTROOM CLERK: March 7th was a Sunday. So how about March 3rd at 12:00 p.m.?

THE COURT: March 3rd at 12:00.

THE COURTROOM CLERK: And do you want to exclude

time, Your Honor?

THE COURT: Time is excluded. I said this was a complex case, anyway.

THE COURTROOM CLERK: Okay.

MS. GLASHAUSSER: Your Honor, I apologize. This is Allegra.

I remain a bit confused about what the date is that Your Honor has set, or whether the date is what Your Honor is reserving decision on?

THE COURT: I am going to reserve on the pending motions and whether the trial should go forward or not.

MS. GLASHAUSSER: But, Your Honor, we were here last week, just last Wednesday, and Your Honor said at that at the latest, the trial would be on August 2nd but that we could try to have it earlier. And now another week has passed and Mr. Augustine is still sitting at MDC. And now it seems that we have taken a step backward to no longer having any idea when the trial date would happen. And so I'm just confused as to how that could be happening.

And we are here --

THE COURT: Okay.

MS. GLASHAUSSER: -- fairly --

THE COURT: Okay. You object to it, but it is still March the 3rd for the status conference, and I will let you know. That's it.

Next, Maryelle?

THE COURTROOM CLERK: That's it for today, Your Honor.

THE COURT: Okay. Thank you.

MR. HEEREN: Thank you, Your Honor.

THE COURT: Bye-bye.

THE COURTROOM CLERK: We're adjourned. Thank you, everyone.

(Matter concluded.)

--ooOoo--

*I (we) certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*/s/ David R. Roy* — *February 17, 2021*

*DAVID R. ROY* — *Date*